**UNITED STATES of America, Plaintiff,**

v.

**ONE 1987 FORD F–350 4×4 PICKUP, Defendant.**

No. 88–4253–R.

United States District Court, D. Kansas.

May 9, 1990.

Benjamin L. Burgess, Jr., U.S. Atty. and Michael G. Christensen, Wichita, Kan., for plaintiff.

John C. Humpage, Topeka, Kan., for Daniel R. Martin, claimant.

Nancy S. Anstaett, McAnany, Van Cleave & Phillips, Lenexa, Kan., for Ford Motor Credit Co., Claimant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is a civil forfeiture action filed pursuant to 21 U.S.C. § 881(a)(4). This statute provides in pertinent part:

> The following shall be subject to forfeiture to the United States and no property right shall exist in them:
>
> (4) All ... vehicles ... which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) ...

"Property described in paragraph (1)" includes: "All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this subchapter." As the caption of the case indicates, the target of this forfeiture action is a Ford pickup truck.

This case is now before the court upon cross motions for summary judgment on behalf of plaintiff, United States and claimant, Daniel Martin. The Ford Motor Credit Company has also filed a claim in this case requesting that its perfected security interest in the truck be recognized and respected. Oral argument has been presented and the court is prepared to rule.

In a forfeiture action under § 881(a)(4), the government bears the initial burden of demonstrating probable cause for belief that the property has been used to facilitate in any manner the transportation, sale, receipt, possession or concealment of a controlled substance. *One Blue 1977 AMC Jeep CJ–5 v. U.S.*, 783 F.2d 759, 761 (8th Cir.1986). "Probable cause" appears to have been defined in two different ways by the courts, at least as it is connected with the term "facilitate" or other key terms within the statute. Some circuits have held that in order for property to be forfeited under this section, there must be a "substantial connection" between the property and the underlying criminal activity. *U.S. v. One 1986 Nissan Maxima GL*, 895 F.2d 1063, 1064 (5th Cir. 1990); *U.S. v. Schifferli*, 895 F.2d 987, 989 (4th Cir.1990); *U.S. v. One 1976 Ford F–150 Pick–Up*, 769 F.2d 525, 527 (8th Cir. 1985); *U.S. v. One 1972 Chevrolet Corvette*, 625 F.2d 1026, 1029 (1st Cir.1980). Other circuits have explicitly rejected any requirement of a "substantial connection," holding instead that use of property "in any manner" in connection with an illegal drug transaction is sufficient to justify forfeiture. *U.S. v. 1964 Beechcraft Baron Aircraft*, 691 F.2d 725 (5th Cir.1982), *cert. denied*, 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983); *U.S. v. One 1974 Cadillac Eldorado Sedan*, 548 F.2d 421, 423 (2d Cir.1977); see also, *U.S. v. One 56–Foot Yacht Named Tahuna*, 702 F.2d 1276, 1281–82 (9th Cir.1983). The Tenth Circuit has not addressed this issue.

Generally, probable cause is demonstrated by showing reasonable grounds for belief, supported by less than prima facie proof, but more than mere suspicion. *U.S. v. One 1978 Chevrolet Impala*, 614 F.2d 983, 984 (5th Cir.1980). The government may rely upon hearsay evidence or circumstantial evidence to establish probable cause. *U.S. v. One 1986 Nissan Maxima GL*, *supra*, 895 F.2d at 1065. Once the government has met its burden to show probable cause for institution of the forfeiture action, the burden then shifts to the claimants to show by a preponderance of

the evidence that the seized property is not subject to forfeiture. *Id.* If unrebutted, a showing of probable cause alone will support forfeiture. *One Blue 1977 AMC Jeep CJ–5 v. U.S., supra,* 783 F.2d at 761. The Federal Rules of Evidence apply during the second stage of the proceedings and, therefore, the claimants cannot rely on hearsay evidence to sustain the ultimate burden of proof. *U.S. v. Lot 9, Block 1, Village East Unit 4,* 704 F.Supp. 1025, 1026 (D.Colo. 1989).

The term "facilitate," as used in the context of the forfeiture statute, has been interpreted to encompass activity making the prohibited conduct less difficult or " 'more or less free from obstruction or hindrance.' " *United States v. One 1977 Lincoln Mark V. Coupe,* 643 F.2d 154, 157 (3d Cir.1981) (quoting *United States v. One 1950 Buick Sedan,* 231 F.2d 219, 222 (3d Cir.1956)); *see also, U.S. v. One 1982 Buick Regal,* 670 F.Supp. 808, 811 (N.D.Ill. 1987).

The facts of this case are connected to a criminal case titled *U.S. v. Evans, Martin, Waggoner & Gish,* Case No. 88–40015, which was tried in this court. There, defendants, who included claimant Daniel Martin, were indicted for and ultimately convicted of conspiracy to possess 500 pounds of marijuana with the intent to distribute. The evidence in the case established that defendant Evans was introduced to DEA agents by a paid informant as someone who knew people who wanted to buy marijuana in large quantities. Evans told the DEA agents, acting under cover, that he knew two people who were interested in purchasing 500 pounds of marijuana. A few days later, a meeting was set up where the agents would display their merchandise. The agents first met Evans, Gish and Martin at the Holidome in Manhattan, Kansas. There, it is admitted by claimant Martin, the sale and purchase of marijuana was discussed. Then, Evans, Martin and Gish rode in Martin's truck—the defendant in the case at bar—to the Best Western Motel in Manhattan where the discussions would continue. Martin drove the Ford pickup from the Holidome to the Best Western Motel. At the Best Western Motel, Evans and Martin examined a five-pound brick of marijuana, smoked some of it, and discussed the purchase of 500 pounds. Martin stated that he wanted to make the purchase but had to contact his "people" who would supply the money. Then, the meeting broke up.

Later, in the same room, Evans told the agents that Martin had made contact with men in New York and Texas who wanted to make the purchase, but he would not know until the next morning whether a deal could be consummated. Over the next two weeks, more discussions were had with Evans. On May 10, 1988, Evans said that a man named "Larry" was now interested in buying the 500 pounds and that he would have the cash on May 12th.

A meeting was set up for May 12, 1988 at a restaurant in Topeka. Defendants Evans, Waggoner and Gish appeared. Martin was not at this meeting. When some money was delivered to the agents by defendant Waggoner, arrests were made by the agents.

The truck in question was owned by claimant Martin during the above-described events. It was seized on May 13, 1988, the day after arrests were made in the criminal case, by Agent Benton of the Drug Enforcement Administration. The seizure was accomplished without a warrant. The indictment in the criminal case was filed June 1, 1988. Guilty verdicts against each defendant were received on October 14, 1988. This forfeiture action was filed October 26, 1988.

It is undisputed that Evans, Martin and Gish used the pickup to ride from the Holidome to the Best Western in Manhattan, where discussions for a drug deal continued and marijuana was sampled by Evans and Martin. Thus, the government contends the pickup was used to facilitate the sale or possession of a controlled substance and forfeiture is warranted. The government admits, however, there is no evidence that any controlled substance or money for or from the purchase or sale of a controlled substance was carried in the vehicle.

Forfeiture of the truck is contested by claimant Martin, who has advanced several arguments. Claimant Martin contends the facts do not warrant forfeiture as a matter of law. There is some variance among the cases over whether vehicles may be forfeited when they have not been used to carry contraband, but only have carried people to the site of a drug transaction or, in this case, negotiations for a drug transaction.

Most cases hold that transportation by a vehicle to the site of an illegal transaction is sufficient to warrant forfeiture of the vehicle regardless of whether drugs or money were carried in the vehicle. See *U.S. v. One 1984 Cadillac*, 888 F.2d 1133 (6th Cir.1989) (forfeiture where Cadillac used for transportation to pawn shop where sale of cocaine took place); *One Blue 1977 AMC Jeep CJ–5 v. U.S.*, 783 F.2d 759 (8th Cir.1986) (forfeiture sustained where jeep was driven to several meetings for discussions of use and proposed purchase and sale of narcotics); *U.S. v. 1966 Beechcraft Aircraft Model King Air*, 777 F.2d 947 (4th Cir.1985) (forfeiture of Aerostar airplane that transported two conspirators to the site of a drug transaction); *U.S. v. One 1979 Porsche Coupe*, 709 F.2d 1424 (11th Cir.1983) (forfeiture where there was transportation of "pivotal figure" several hundred miles to where an attempted drug purchase took place); *U.S. v. One 1977 Cadillac Coupe de Ville*, 644 F.2d 500 (5th Cir.1981) (forfeiture where there was transportation of drug dealer and accomplice to site of a drug deal); *U.S. v. 1974 Cadillac Eldorado Sedan*, 548 F.2d 421 (2d Cir. 1977) (forfeiture where vehicle transported people to site for drug transaction discussions which did not result in an agreement until another meeting three days later); *U.S. v. One 1982 Buick Regal*, 670 F.Supp. 808 (N.D.Ill.1987) (forfeiture of car used to travel to drug deals); *U.S. v. One 1981 Ford F–100 Pickup Truck*, 577 F.Supp. 221 (D.Mass.1983) (forfeiture ordered whether vehicle used to transport person to a prearranged meeting place for a drug transaction).

The case cited above from the Second Circuit appears to be the leading example of a broad reading of § 881. There, the court argues:

> As a matter of common sense we cannot accept the concept that while the transportation of any quantity of drugs however minute is admittedly sufficient to merit the forfeiture of the vehicle, nonetheless the transportation of the trafficker to the site of the drug sale or to a prearranged meeting with a prospective customer where the sale is proposed should save the vehicle from forfeiture.... If the purpose of the statute is, as Congress indicated, to reduce the profits of those who practice this nefarious profession, we are loathe to make the forfeiture depend upon the accident of whether dope is physically present in the vehicle. Its use to transport the peddler or his confederates to the scene of the sale or to a meeting where the sale is proposed is sufficient.

548 F.2d at 425–26.

Two cases from other circuits do not directly disagree with the Second Circuit's *1974 Cadillac* case, but the results are somewhat difficult to reconcile. In *U.S. v. One 1976 Ford F–150 Pickup*, 769 F.2d 525 (8th Cir.1985), the pickup was used to travel to a marijuana field. The driver of the pickup was seen taking metal roofing material from the truck and putting it in a shack by the field. He was arrested after he inspected the marijuana crop in the field. The Eighth Circuit said where there was only evidence of a single trip with the truck to the field and no evidence that anything transported in the truck was to be used for the marijuana crop, there was too tenuous a connection to the marijuana operation to warrant forfeiture of the truck. In *U.S. v. One 1972 Chevrolet Corvette*, 625 F.2d 1026 (1st Cir.1980), the car was used to drive to a meeting where the driver received money he had fronted for the purchase of drugs. The drugs had been purchased some days before. The First Circuit held that where the car was used some days *after* the purchase of drugs and where the money could have been transported in the car weeks or months after the purchase of the drugs (e.g., if the driver had been paid by check and waited some

time before depositing the check), the connection to the drug sale was too minimal to warrant forfeiture.

Both cases acknowledge but do not expressly disagree with the Second Circuit's broad view of the statute; they simply try to distinguish their facts from the facts in the Second Circuit case. · It should be noted that prior to the Second Circuit's *1974 Cadillac* case, the United States District Court for the District of New Hampshire took a narrow construction of § 881 to hold that a car could not be forefeited when it was used to lead drug agents to a location where a drug sale was transacted. *U.S. v. One 1972 Datsun*, 378 F.Supp. 1200 (D.N.H.1974). The First Circuit did not mention this decision in its *1972 Chevrolet Corvette* case. In fact, the same judge who authored the district court opinion wrote the First Circuit opinion six years later. Hence, it has been speculated that the *Datsun* opinion has been overruled *sub silentio. U.S. v. One 1981 Ford F–100 Pickup Truck, supra,* 577 F.Supp. at 223 n. 2.

In 1947, under a different but similar statute, 49 U.S.C. § 781, the Tenth Circuit overturned a forfeiture order where a car was used to make a drug purchase. In *Platt v. United States*, 163 F.2d 165 (10th Cir.1947), a mother who knew her daughter was a dope addict, but did not know her daughter's plans, loaned her car to her daughter. The daughter drove to a drugstore and, using a forged prescription, obtained some morphine. The trial court ordered that the car be forfeited under 49 U.S.C. § 781, which provided that it was unlawful to use a vehicle "to facilitate" the purchase of contraband. Judge Huxman wrote for the majority that the means the daughter used to go to the store had nothing to do with the purchase. "The ease or difficulty of the purchase would have been the same no matter how she got there." 163 F.2d at 167. Therefore, according to the Tenth Circuit, the car was not used to "facilitate" the purchase and could not be forfeited. Judge Bratton dissented. See also, *Howard v. U.S.*, 423 F.2d 1102, 1104 (9th Cir.1970) (car used only for commuting to scene of a crime may not be forfeited under § 781).

The Second Circuit's *1974 Cadillac* case distinguishes the Tenth Circuit opinion in *Platt* on two grounds. First, the Second Circuit believes § 881 is broader because it covers vehicles used *"in any manner* to facilitate" a drug transaction. Section 781 does not contain the "in any manner" language. The Second Circuit stated:

> Although we have found no legislative history to explain the addition of the language … its employment in a statute specifically addressed to the problem of drug abuse patently indicates the congressional intent to broaden the applicability of the forfeiture remedy it provided.

548 F.2d at 425. The Second Circuit noted as another grounds to distinguish the *Platt* case that the car in *Platt* belonged to a mother who did not know her daughter was going to use it to buy dope. This could have played a role in the Tenth Circuit's decision, but the Tenth Circuit certainly does not rely upon it in the written opinion.

■ In deciding this case, the court shall follow what appears to be the majority rule for this situation. We conclude that the evidence provides reasonable grounds to believe Daniel Martin used the truck in question to travel to a motel where he could inspect, smoke, and negotiate the purchase of marijuana. The truck consequently was intended to make the possession and purchase of marijuana less difficult. Accordingly, we find that the truck "in some manner" facilitated or was intended to facilitate the sale or possession of a controlled substance and is subject to forfeiture under § 881. Cf., *U.S. v. One 1974 Cadillac Eldorado Sedan, supra.* We further find that the truck was substantially connected to the intended purchase and possession of marijuana. Therefore, if the law requires a "substantial connection" to drug activity, that test is met on these facts. Cf., *U.S. v. One 1979 Porsche Coupe, supra.* Finally, we hold that the Tenth Circuit case of *Platt v. United States, supra,* is distinguishable since it involves a different and more narrow statute. In sum, the facts on record are suffi-

cient to establish probable cause for the forfeiture.

We next consider whether claimant Martin has rebutted the probable cause showing of the government or offered some other valid defense to forfeiture. To rebut the probable cause showing of the government, claimant Martin notes that a drug deal was not consummated on April 20, 1988, the night Martin drove his pickup truck to the Best Western Motel in Manhattan, Kansas. In fact, Martin never personally spoke with Agent Benton after the meeting at the Best Western Motel, despite advising Agent Benton that he would get back to him in thirty minutes. Martin claims that he never intended to purchase marijuana and that he only made statements showing interest in order to ease his exit from the meeting.

We believe Martin's claims are insufficient to rebut the government's evidence for two reasons. First, Martin admits that he smoked and handled marijuana at the Best Western Motel. Because his travel to the motel facilitated this illegal conduct, there is an adequate basis to forfeit the truck. Second, the same issue regarding Martin's role in the alleged conspiracy was raised in the criminal trial. Upon the same evidence, a jury found Martin guilty of conspiring to purchase marijuana. Therefore, Martin should be estopped from denying his role in the conspiracy in this case. See *U.S. v. Monkey*, 725 F.2d 1007, 1010 (5th Cir.1984). For these reasons, we find that claimant Martin has not rebutted the probable cause showing of the government.

■ Martin has also raised some legal defenses against forfeiture in this case. Martin contends, for example, that forfeiture should not be ordered because the truck was seized without a warrant. The statute, however, permits the seizure of property without the issuance of process by a district court when "the Attorney General has probable cause to believe that the property is subject to civil forfeiture under this subchapter." 21 U.S.C. § 881(b)(4). Moreover, the Eighth Circuit recently stated: "It is settled law … that there is no requirement of preseizure no-

tice and hearing in a forfeiture case." *U.S. v. One 1980 Red Ferrari*, 875 F.2d 186, 189 (8th Cir.1989); see also, *U.S. v. One 1985 Cadillac Seville*, 866 F.2d 1142, 1147 (9th Cir.1989); *Willis v. United States*, 787 F.2d 1089, 1094 (7th Cir.1986); *U.S. v. Bush*, 647 F.2d 357 (3d Cir.1981); but see, *U.S. v. Pappas*, 613 F.2d 324, 339 (1st Cir.1980).

■ Martin rejoins that the Attorney General did not personally find probable cause for the seizure in this case. The statute, 21 U.S.C. § 881(d), and the regulations promulgated pursuant to the statute, 21 C.F.R. § 1316.72, permit a Drug Enforcement Administration Agent, such as Agent Benton, to seize property under authority delegated by the Attorney General. See *U.S. v. Gaultney*, 581 F.2d 1137, 1140 n. 2 (5th Cir.1978) *cert. denied*, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 259 (1980); *U.S. v. Savides*, 664 F.Supp. 1544, 1551 (N.D.Ill.1987); *U.S. v. One 1971 Volvo 2-Door Sedan*, 393 F.Supp. 843, 847 (C.D.Cal. 1975). Therefore, we reject Martin's claim that the seizure was made without proper authorization. However, even if the seizure was illegal for this reason, we do not believe the truck would be immune from forfeiture because the requirements for forfeiture have been satisfied with untainted evidence. See *U.S. v. One 1977 Mercedes Benz*, 708 F.2d 444, 450 (9th Cir.1983) *cert. denied*, 464 U.S. 1071, 104 S.Ct. 981, 79 L.Ed.2d 217 (1984) (court avoids deciding contention that federal seizure was done without a warrant and without due process because the " 'mere fact of the illegal seizure, standing alone, does not immunize the goods from forfeiture,' " quoting *U.S. v. One 1971 Harley–Davidson Motorcycle*, 508 F.2d 351 (9th Cir.1974) (per curiam)).

■ Martin may also argue that the government waited too long after the seizure to institute the forfeiture proceedings. The truck was seized on May 13, 1988. This forfeiture case was filed on October 26, 1988. During most of the time between the seizure and the filing of this case, the connected criminal action was in progress and administrative forfeiture proceedings were underway. Four factors are used to evaluate claims of post-seizure delay: the length of delay; the government's reason

for the delay; the claimant's assertion of any rights to a hearing during the delay period; and whether the delay prejudiced the claimant's interests. *U.S. v. One 1985 Cadillac Seville,* 866 F.2d 1142, 1147 (9th Cir.1989) citing, *U.S. v. $8,850,* 461 U.S. 555, 566–69, 103 S.Ct. 2005, 2013–15, 76 L.Ed.2d 143 (1983).

■ In this case, the length of the delay was not *per se* unreasonable. Cf., *U.S. v. One 1973 Ford LTD,* 409 F.Supp. 741 (D.Nev.1976) (14–month delay not excessive). The record does not demonstrate prejudice to Martin from the delay. Nor has there been a showing that Martin asked for the return of his property or sought a hearing upon the matter prior to the filing of the forfeiture action in this court. At oral argument on the instant motions, the court learned that Martin filed an administrative claim to the property after it had been seized and that the matter was then referred to the U.S. Attorney's Office in August 1988. A decision to file this case was apparently made in October after the conclusion of the related criminal trial. Nothing in this sequence of events persuades the court that delay provides Martin with a good defense against forfeiture.

In conclusion, the facts in this case are virtually uncontested. There is no factual dispute which stands as an obstacle to summary judgment. The facts provide probable cause for the seizure of the truck in question. Claimant Martin has failed to rebut the government's probable cause showing or demonstrate some other legal defense to forfeiture. Therefore, plaintiff's motion for summary judgment shall be granted. Claimant Martin's motion for summary judgment shall be denied. As no objection has been stated to the claim of the Ford Motor Credit Company, the court directs that the security interest of Ford Motor Credit Company be honored by the plaintiff or any subsequent owner of the truck.

IT IS SO ORDERED.